IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No.  1:22-cv-919 |
| | ) |
| $35,995.00 U.S. CURRENCY, | ) |
| | ) |
| AND | ) |
| | ) |
| $57,545.00 U.S. CURRENCY, | ) |
| | ) |
| **Defendants** *in Rem.* | ) |

**COMPLAINT FOR FORFEITURE IN REM**

COMES NOW the plaintiff, United States of America, by and through its counsel, Jessica D. Aber, United States Attorney for the Eastern District of Virginia and by Annie Zanobini, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. The United States brings this action *in rem* seeking the forfeiture of all right, title and interest in $35,995.00 U.S. Currency and $57,545.00 U.S. Currency (collectively "defendant currency"), involving violations of 21 U.S.C. §§ 841 and 846.  The defendant property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).  21 U.S.C. § 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all

1

moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter," are subject to forfeiture.

## THE DEFENDANTS IN REM

2. The $35,995.00 U.S. Currency was seized from Tatyana Copeland ("Copeland") at Dulles International Airport on March 2, 2022, by federal officers. Dulles International Airport is located in Loudoun County, Virginia. The defendant property is currently in the possession of the United States Marshals Service in the Eastern District of Virginia.

3. The $57,545.00 U.S. Currency was seized from a person (Person #1) at Dulles International Airport on March 2, 2022, by federal officers. The defendant property is currently in the possession of the United States Marshals Service in the Eastern District of Virginia.

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit the defendant currency. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court has jurisdiction over this action in particular pursuant to the applicable forfeiture statute, 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the defendant currency under 28 U.S.C. § 1395(b), as the currency was found within the Eastern District of Virginia. Moreover, the Court will have control over the defendant currency upon the service of an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(b).

6. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §

1395(b), because the defendant currency is located within this district.

## BASIS FOR FORFEITURE

7. All moneys furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a controlled substance exchange in violation of Subchapter I, Chapter 13 of Title 21 of the United States Code, are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## FACTUAL ALLEGATIONS

8. On March 2, 2022, Tatyana D. Copeland "Copeland" purchased a one-way ticket for a same-day flight from Norfolk International Airport (ORF) to Los Angeles International Airport (LAX) with a layover at Dulles International Airport (IAD). Later that same day, Drug Enforcement Administration ("DEA") agents and taskforce officers (hereinafter referred to interchangeably as "officer(s)") deployed a certified, trained narcotics detection canine in the baggage basement area of Dulles International Airport where checked baggage from United Airlines Flight 2276 from IAD to LAX was located. Los Angeles is a known source city for narcotics.

9. The canine, certified to detect the odor of controlled substances, alerted to three suitcases: (1) a black American Tourister canvas suitcase roller bag checked by Copeland with a bag tag number 3016482383; (2) a black J10 canvas suitcase checked by Person #1, bearing bag tag number 3016482383; and (3) a white hard suitcase checked by Person #2, bearing bag tag number 3016479180.

10. After the canine alerted to the bags, taskforce members within the terminal paged Copeland, Person #1, and Person #2 multiple times, but none of the individuals responded to the

pages.

11. One of the officers saw two individuals, later identified as Copeland and Person #2 sitting away from the departure gate. The officer approached both individuals, and then identified himself as a taskforce officer with DEA by showing his credentials to Copeland and Person #2. The officer told Copeland and Person #2 that a certified narcotics canine had alerted to the presence of narcotics within both of the bags they checked. The TFO asked to speak with both of them, and they both agreed to speak with him.

13. Prior to speaking with Copeland and Person #2, two officers approached Person #1, identified themselves as Special Agents with the DEA, and showed Person #1 their credentials. Person #1 handed the officers a Rhode Island Driver's License that officers later confirmed was a fake identification. Person #1 refused to consent to a search of the bag he checked and refused to answer any questions. Person #1 left the gate area and did not board United Airlines Flight 2276 to Los Angeles, California.

14. Both Copeland and Person #2 stated that they were not traveling with any narcotics or large sums of cash.

15. The TFO asked for consent to search the two bags checked by Copeland and Person #2, and both Copeland and Person #2 consented to the search of the bags.

16. Person #2's bag contained minimal amount of female clothing.

17. The officer's opened the bag checked by Copeland and found men's clothing. Inside the pockets of men's jeans, officers saw multiple bundles of U.S. Currency wrapped in a rubber band.

18. After finding the currency, Copeland told the officers that she was not aware that

the suitcase she checked contained cash.

19. Copeland joked with Person #2 that they could have just taken the cash and made a lot of money.

20. Copeland told the officer that she met an unknown male on Instagram. She said she did not know the person or have any other information about the person. She told officers she was speaking with the person on the Application "Clubhouse." She told the unknown male that she was going to take a vacation to Los Angeles. The unknown male then asked her to take a bag to Los Angeles for him.

21. Copeland told the officers that she met the unknown male at the airport in Norfolk, Virginia, and he gave her the checked bag. Copeland stated that she was told to take the bag to Los Angeles and then some of the man's friends would take the bag from her.

22. Copeland said that the bag was not hers, she did not pack it, and she did not know what was in the bag.

23. Copeland stated that she had opened the bag and observed that there was some clothing in it. She again stated that nothing in the bag belonged to her.

24. Copeland told the officers to take all the money in the bag, because it did not belong to her and she did not want anything to do with it.

25. When asked to describe the subject that gave her the bag in Norfolk, Copeland said the man was wearing a blue puffy jacket and a chain around his neck. When officers encountered Person #1—prior to speaking with Copeland—Person #1 was also wearing a blue puffy jacket and chain around his neck.

26. Copeland showed the officer the Instagram account for the unknown male she

alleged gave her the bag to take to Los Angeles. The person in the photographs associated with the account appeared to be a different subject from Person #1.

27. Copeland told agents that she was the owner of "Blinky Apparel" on Instagram.

28. A Virginia state search warrant was obtained for the bag checked by Person #1. Upon the execution of the state search warrant, a TFO located several stacks of U.S. Currency banded together with rubber bands in the pants pockets of multiple pairs of jeans that were packed in the suitcase. The currency was packaged in the same manner as the currency within Copeland's bag. Person #1's bag contained a total of $57,545.00 in U.S. Currency.

29. A separate TFO deployed a trained narcotics canine on the U.S. Currency found in the bag checked by Person #1, and the dog alerted to the presence of narcotics.

30. Officers queried the Virginia wage database and found that Copeland was last employed in the 2nd quarter of 2020 for DTLR Inc. and her reported earnings for that quarter were $301.20. Officers also learned that Person #1 had no wage earnings in Virginia, but did receive pandemic unemployment assistance in the amount of approximately $9,000 from May 2020 to May 2021.

36. The DEA then seized the $57,545.00, currency found in the bag checked by Person #1. The officer maintained complete care, custody, and control of the currency and transported it back to the DEA office located at Dulles Internal Airport until it was transferred to Loomis in Springfield, Virginia for an official count.

37. On March 2, 2022, DEA seized and took custody of the $35,995.00 currency seized from Copeland. An officer maintained complete care, custody, and control of the currency until it was transported to Loomis in Springfield, Virginia for an official count.

38. On April 20, 2022, notice of seizure was mailed to Copeland for the $57,545.00. On April 28, 2022, notice of seizure was mailed to Copeland for the $35,995.00.

39. On May 16, 2022, DEA received a claim from Copeland for both the $35,995.00 U.S. Currency and the $57,545.00 U.S. Currency seized on March 2, 2022.

40. On June 27, 2022, and June 29, 2022, Copeland filed a supplemental claim for both the $35,995.00 U.S. Currency and the $57,545.00 U.S. Currency seized on March 2, 2022. In the supplemental response, Copeland stated that she was not sure why DEA was sending her notice regarding two separate currency amounts. In the letter, she further stated that the money was a gift to push start her business, and that she has no documentation to help her case.

## PRAYER FOR RELIEF

46. Based on the foregoing, the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to such an exchange, or as moneys used or intended to be used to facilitate a controlled substance exchange in violation of Subchapter I, Chapter 13 of Title 21 of the United States Code.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant currency and that due notice be given to all interested parties to appear and show cause why said forfeiture of the defendant currency should not be decreed, that the defendant currency be condemned and forfeited to the United States to be disposed of according to law, and for such other and further relief as this Honorable Court may deem just and proper.

DATED this 12th day of August 2022.

Respectfully submitted,

Jessica D. Aber
UNITED STATES ATTORNEY

By: /s/ Annie Zanobini
Annie Zanobini
Assistant United States Attorney
California Bar No. 321324
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office Number: (703) 299-3903
Facsimile Number: (703) 299-3982
Email Address: annie.zanobini2@usdoj.gov

VERIFICATION

I, Patrick C. Briant, Task Force Officer of the United States Drug Enforcement Agency, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based on information known by me personally and/or furnished to me by various federal, state, and local law enforcement agencies, and that everything contained herein is true and correct to the best of my knowledge.

Executed at Loudoun County, Virginia, this 12th of August, 2022.

*Patrick C. Briant*

Patrick C. Briant, Task Force Officer
U.S. Drug Enforcement Administration