IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22cv919 (MSN/WEF) |
| ) | |
| $35,995.00 U.S. CURRENCY et al., ) | |
| ) | |
| Defendants in Rem. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the United States of America's ("Plaintiff") Motion for Default Judgment and Order of Forfeiture. (Dkt. 16). In this *in rem* action, Plaintiff alleges that the $35,995.00 in funds (the "Defendant Currency") seized by federal agents at Dulles International Airport on March 2, 2022 were moneys furnished for or proceeds traceable to an exchange for a controlled substance. (Compl. ¶ 1, Prayer for Relief). Having effected service of process and no person having answered the complaint or otherwise appeared, Plaintiff now seeks a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) and the entry of an Order of Forfeiture pursuant to 21 U.S.C. § 881(a)(6), against the Defendant Currency.[1] For the reasons set forth below, the undersigned United States Magistrate Judge recommends the Court grant Plaintiff's Motion.

---

[1] Plaintiff named two Defendants in Rem in its complaint, the Defendant Currency and an additional $57,545.00 in United States currency. As discussed herein, Plaintiff reached a settlement with a claimant with respect to the $57,545.00. (Dkt. 20). Therefore, Plaintiff's Motion for Default Judgment pertains only to the Defendant Currency.

## I. <u>Seizure of the Defendant Currency</u>

As discussed in greater detail below, on March 2, 2022, Drug Enforcement Administration ("DEA") agents and taskforce officers (collectively referred to as "agents" or "federal agents") deployed a certified, trained narcotics detection canine in the area of Dulles International Airport ("IAD" or "Dulles") where checked baggage was being stored for an upcoming flight to Las Angeles International Airport ("LAX"). (Compl. ¶ 8). The canine alerted to three suitcases: (1) a black canvas roller bag checked by Tatyana D. Copeland; (2) a black canvas suitcase checked by Robert Percell Moses Jr., referred to in the complaint as "Person #1"; and (3) a white hard suitcase checked by A.B., referred to in the complaint as "Person #2." (Compl. ¶ 9).[2]

Federal agents located Ms. Copeland and A.B. standing together and informed them that a certified narcotics detection canine had identified the presence of illegal drugs inside the bags they checked. (Compl. ¶ 11). Ms. Copeland and A.B. told agents that they were not traveling with any narcotics or large sums of cash. (Compl. ¶ 14). Ms. Copeland then consented to a search of the bag she checked, and inside the bag agents recovered the Defendant Currency wrapped in a rubber band and placed in the pocket of men's jeans. (Compl. ¶¶ 15, 17).[3] Ms. Copeland told agents she did not know the money was in the bag, and that she was just transporting the bag to Los Angeles for a person she had met on-line. Ms. Copeland stated she was met at the airport by a man who gave her the bag. Ms. Copeland could only describe the man as wearing a blue "puffy" jacket and wearing a chain around his neck. (Compl. ¶ 25). Ms. Copeland also told agents to take

---

[2] The undersigned will refer to A.B. by his/her initials throughout this Report and Recommendation because A.B. has not been fully identified in these pleadings except to confirm receipt of service.

[3] A.B. also consented to the search of the bag he/she checked, but no money or narcotics were recovered.

all of the money in the bag because it did not belong to her and she did not want anything to do with it. (Compl. ¶¶ 20–24).

Federal agents also located and approached Mr. Moses who was wearing a blue "puffy" jacket and wearing a chain around his neck. (Compl. ¶ 25).  Mr. Moses provided agents a Rhode Island identification card that was later determined to be fictitious.  Mr. Moses refused to consent to a search of the bag he checked, refused to answer questions posed by the agents, and then exited the gate area and did not board the flight to LAX.[4]  (Compl. ¶ 13).  Thereafter, a Virginia state search warrant was obtained to search the bag checked by Mr. Moses, and inside the bag agents recovered $57,545.00 wrapped in rubber bands and placed in the pockets of multiple pairs of jeans. (Compl. ¶ 28).

On or about March 2, 2022, federal agents seized the Defendant Currency as well as the $57,545.00 recovered from Mr. Moses' bag.  (Compl. ¶¶ 36, 37).

On April 20, 2022, notice of the seizure of the $57,545.00 was mailed to Ms. Copeland. On April 28, 2022, notice of the seizure of the Defendant Currency was mailed to Ms. Copeland. (Compl. ¶ 38).

On May 16, 2022, DEA received a claim from Ms. Copeland for both the $57,545.00 and the Defendant Currency.  (Compl. ¶ 39).

On June 27, 2022, and again on June 29, 2022, Ms. Copeland filed a supplemental claim for both the $57,545.00 and the Defendant Currency.  In her supplemental claim, Ms. Copeland

---

[4] The complaint alleges that on March 2, 2022, the same day the Defendant Currency was recovered, Ms. Copeland purchased a one-way ticket to fly from Norfolk International Airport (ORF) to LAX, with a layover at Dulles. (Compl. ¶ 8).  The complaint does not specifically allege that Mr. Moses or A.B. purchased tickets to fly to LAX but given that Mr. Moses and A.B. each checked a bag for the flight it is reasonable to infer that they had, in fact, purchased tickets.

stated that the seized money was a gift to begin a business. Ms. Copeland, however, did not provide any supporting documentation. (Compl. ¶ 40). Ms. Copeland's claim in June 2022 that the seized money was a gift to begin a business, is materially inconsistent with her statements to federal agents on March 2, 2022 in which she said that she was not traveling with large sums of cash and she did not know the Defendant Currency was inside the bag she checked. (Compl. ¶¶ 14, 40).

## II. Procedural History

On August 12, 2022, Plaintiff initiated this civil action by filing a verified complaint *in rem* for forfeiture of the Defendant Currency and the $57,545.00 recovered from Mr. Moses' bag. (Dkt. 1) ("Compl.").

On August 19, 2022, the warrant and summons for arrest *in rem* were duly executed on the Defendant Currency and the $57,545.00 by the United States Marshal Service, pursuant to Supplemental Rule G(3)(b), (c). (Dkt. 6-1 ¶ 4; *see also* Dkt. 4).

From August 30, 2022 to September 28, 2022, Plaintiff executed 30 consecutive days of service by publication as to the Defendant Currency and the $57,545.00 on an official government internet website <www.forfeiture.gov>, and so certified on November 8, 2022. (Dkt. 5).

On August 29, 2022, Plaintiff sent Ms. Copeland notice of this action and a copy of the complaint by certified mail. On August 31, 2022, Plaintiff received a direct communication from Ms. Copeland in which Ms. Copeland requested notice be sent to a second address. On August 31, 2022, the same day Ms. Copeland contacted the government, Plaintiff sent notice of this action and a copy of the complaint by certified mail to the second address provided by Ms. Copeland. The documents were delivered on September 2, 2022. (Dkt. 16, at 2).

On November 8, 2022, Plaintiff filed a request for entry of default as to the Defendant Currency and the $57,545.00, supported by an affidavit from Assistant United States Attorney Annie Zanobini. (Dkts. 6, 6-1). Pursuant to this request, the Clerk entered default on November 10, 2022. (Dkt. 9).

On December 1, 2022, Plaintiff filed a Motion for Default Judgment and Order of Forfeiture as to the Defendant Currency and the $57,545.00, and a hearing on the motion was set for December 16, 2022. (Dkts. 8, 9).

On December 7, 2022, Plaintiff filed a Motion to Continue the Motion for Default Judgment and Order of Forfeiture from December 16, 2022 to December 30, 2022, which the undersigned granted. (Dkts. 10, 11).

On December 30, 2022, Plaintiff moved to dismiss without prejudice the pending Motion for Default Judgment in order for Plaintiff to provide notice to additional individuals believed to have an interest in the seized funds. (Dkt 12). The undersigned granted Plaintiff's motion the same day. (Dkt 13).

On December 19, 2022, Plaintiff sent A.B. notice of this action and a copy of the complaint by certified mail. On December 21, 2022, the documents were delivered to an individual at A.B.'s address. (Dkt. 16, at 2).

On December 19, 2022, Plaintiff also sent Mr. Moses notice of this action and a copy of the complaint by certified mail. There is no evidence these documents were delivered. However, Plaintiff resent the same documents on January 4, 2023 by Federal Express, and on January 6, 2023 Federal Express confirmed delivery. (Dkt. 16, at 2).

On January 20, 2023, Mr. Moses, through counsel, filed a verified claim in which he stated he was the owner of the $57,545.00 that had been seized from the bag he had checked. (Dkt. 14).

5

On February 9, 2023, Mr. Moses, through counsel, filed an answer to the complaint. The answer addressed only the $57,545.00 that was seized from the bag checked by Mr. Moses. (Dkt. 15).

Plaintiff and Mr. Moses then reached a settlement agreement as to the $57,545.00, and on March 7, 2023, Plaintiff and Mr. Moses, through counsel, filed a consent motion requesting the Court approve the terms of their agreement. (Dkt. 17). On March 9, 2023, the Court entered a fully endorsed consent order submitted by Plaintiff and Mr. Moses. (Dkt. 20). In the Court's Order, the Defendant Currency was specifically excluded from the settlement agreement.

On March 7, 2023, the same day Plaintiff and Mr. Moses notified the Court of the terms of their settlement agreement regarding the $57,545.00, Plaintiff re-filed its Motion for Default Judgment and Order of Forfeiture pertaining only to the Defendant Currency. (Dkt. 16).

A hearing of the motion was held on March 24, 2023, before the undersigned, at which counsel for Plaintiff appeared but no claimant appeared asserting an interest in the Defendant Currency. (Dkt. 22). There is no indication that Plaintiff served notice of the March 24, 2023 hearing on Ms. Copeland and ordinarily there is no requirement to do so under Supplemental Rule G or any other Federal Rule of Civil Procedure. However, as noted above, prior to the filing of this civil action, Ms. Copeland had twice filed a claim with the DEA seeking return of the Defendant Currency. Although the claims submitted to the DEA prior to the filing of this case do not constitute a claim or answer to the complaint under Supplemental Rule G(5), the undersigned nevertheless continued the hearing on Plaintiff's Motion for Default Judgment to July 14, 2023, and ordered Plaintiff to provide notice of the hearing to Ms. Copeland and any other interested

parties. (Dkt. 23). Plaintiff provided the additional notice to Ms. Copeland,[5] Mr. Moses,[6] and A.B.[7] of the July 14, 2023 hearing. (Dkt. 25).

At the July 14, 2023 hearing, Mr. Moses appeared through counsel who confirmed on the record that Mr. Moses was not asserting any claim to the Defendant Currency. Neither Ms. Copeland nor A.B. appeared at the hearing.

To date, no person, including Ms. Copeland or A.B., has filed a verified claim or statement of interest, or otherwise appeared in this civil action or answered the complaint with respect to the Defendant Currency.

### III. Jurisdiction and Venue

The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. District courts have original jurisdiction over actions commenced by the United States, 28 U.S.C. § 1345, and over actions for forfeiture, 28 U.S.C. § 1355(a). The United States of America is the plaintiff in this action and brought this claim under 21 U.S.C. § 881(a)(6) against the Defendant Currency. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355(a). Because the Defendant Currency was seized at Dulles International Airport, which is within the Eastern District of Virginia, the Court

---

[5] Notice of the July 14, 2023 hearing was sent to Ms. Copeland at the address she previously provided to the government and that was confirmed through the CLEAR database, a collection of property records. Notice was successfully delivered. (Dkt. 16; Representation of AUSA Hudson at the July 14, 2023 hearing).

[6] Notice of the July 14, 2023 hearing was provided to Mr. Moses' counsel through CM/ECF. (Dkt. 16).

[7] Notice of the July 14, 2023 hearing was sent to A.B. at two addresses associated with him/her in the CLEAR database. Notice was successfully delivered. (Dkt. 16; Representation of AUSA Hudson at the July 14, 2023 hearing).

has *in rem* jurisdiction over those funds. 28 U.S.C. § 1355(b). Moreover, venue is proper in this Court pursuant to 28 U.S.C. § 1395(a) because the funds were seized in this District.

For these reasons, the undersigned recommends a finding that this Court has subject matter jurisdiction over this action, that the Court has *in rem* jurisdiction over the Defendant Currency, and that venue is proper in this Court.

### IV. Service of Process and Notice to Interested Parties

The Court must also be satisfied that the defaulting parties have been properly served. Here, a warrant and summons of arrest *in rem* were issued as to the Defendant Currency, and on August 19, 2022, the United States Marshals Service executed the warrant and summons of arrest *in rem*. (Dkts. 3, 4). Plaintiff therefore has demonstrated it complied with the process requirements under Supplemental Rule G(3)(b) and (c).

Furthermore, in a civil forfeiture action such as this, Supplemental Rule G requires notice by publication and sending notice of the action and a copy of the complaint to all potential claimants. Here, a notice of the civil forfeiture action was published on the official government website, <www.forfeiture.gov>, for a period of 30 days, beginning August 30, 2022. (Dkts. 5, 5-1). In addition, Plaintiff identified and properly served three individuals as potential claimants to the Defendant Currency, Tatyana Copeland, Robert Percell Moses, Jr., and A.B. (Dkt. 16, at 2).

Ms. Copeland was identified in the complaint as the person who checked the bag from which the Defendant Currency was seized and is therefore clearly a potential claimant to the Defendant Currency. (Compl. ¶ 37). As noted above, on August 29, 2022, Plaintiff sent Ms. Copeland notice of this action and a copy of the complaint by certified mail. The record does not reflect how Plaintiff determined this was Ms. Copeland's address. However, given that Ms. Copeland was interviewed by agents on the day the Defendant Currency was seized, it is

reasonable to infer that during the interview Ms. Copeland provided agents with her home address. Nevertheless, on August 31, 2022, Plaintiff received a direct communication from Ms. Copeland requesting notice be sent to a second address.  On August 31, 2022, the same day Ms. Copeland contacted the government, Plaintiff sent notice of this action and a copy of the complaint by certified mail to the second address provided by Ms. Copeland.  The documents were delivered on September 2, 2022.  (Dkt. 16; Representation of AUSA Hudson at the July 14, 2023 hearing).  In addition, Plaintiff provided Ms. Copeland with notice of the July 14, 2023 hearing on Plaintiff's Motion for Default Judgment and Order of Forfeiture, and after receiving notice of the hearing date, time and location, Ms. Copeland elected not to appear.  (Dkt. 25; Representation of AUSA Hudson at the July 14, 2023 hearing).

     Mr. Moses was identified in the complaint as the person who checked the bag from which the $57,545.00 was seized. (Compl. ¶ 28).  Since the $57,545.00 was banded and stored in a manner similar to the Defendant Currency and because Mr. Moses generally matched the description of the person Ms. Copeland identified as giving her the bag to check, Mr. Moses was properly considered a potential claimant to the Defendant Currency.  (Compl. ¶¶ 17, 25, 28).  On December 19, 2022, Plaintiff sent Mr. Moses notice of this action and a copy of the complaint by certified mail.  There is no evidence these documents were delivered.  However, Plaintiff again sent the same documents on January 4, 2023 by Federal Express, and on January 6, 2023 Federal Express confirmed delivery.  (Dkt. 16, at 2).  The record does not reflect how Plaintiff determined that the documents were delivered to Mr. Moses' current address.  Unlike Ms. Copeland, Mr. Moses did not consent to an interview and attempted to conceal his address by providing agents with a fictitious identification card.  Nevertheless, Mr. Moses clearly received actual notice of this action because on January 20, 2023, Mr. Moses, through counsel, filed a verified claim and an

answer to the complaint in which he stated he was the owner of the $57,545.00 that had been seized from the bag he had checked. (Dkts. 14, 15). The fact that Mr. Moses filed an answer to the very complaint that seeks seizure and forfeiture of the Defendant Currency, and in doing so only asserted a claim to the $57,545.00 seized from the bag he checked, is sufficient for the undersigned to find that Mr. Moses had actual knowledge under Supplemental Rule G(4)(b)(v) of Plaintiff's *in rem action* against the Defendant Currency. The record clearly supports a finding that Mr. Moses' only claim was against the $57,545.00. In further support of this conclusion, Mr. Moses' attorney appeared at the July 14, 2023 hearing and stated on the record that Mr. Moses received notice of this action and made no claim against the Defendant Currency.

      A.B. was identified in the complaint as the person who checked a bag from which the canine detected the presence of illegal narcotics, but a search of A.B.'s bag revealed no drugs or money. (Compl. ¶¶ 9, 16). A.B. was seen by agents speaking with Ms. Copeland and on that basis alone was considered to be a potential claimant to the Defendant Currency. (Compl. ¶ 11). On December 19, 2022, Plaintiff sent A.B. notice of this action and a copy of the complaint by certified mail. On December 21, 2022, the documents were delivered to an individual at A.B.'s address. (Dkt. 16, at 2). Again, the record does not reflect how Plaintiff determined this was A.B.'s address. However, given that A.B. was interviewed by agents on the day the Defendant Currency was seized, it is reasonable to infer that during the interview A.B. provided agents with his/her home address. (Compl. ¶ 11).

      Even if the record is not clear on this point, the undersigned finds that treating A.B. as a potential claimant was not required under the circumstances, and therefore Plaintiff had no duty to provide notice under Supplemental Rule G(4)(b). Here, the only nexus between A.B. and the Defendant Currency is that A.B. was seen speaking with Ms. Copeland. (Compl. ¶ 11). The fact

that A.B.'s bag was identified by the canine as emitting the scent of drugs is offset by the fact that a subsequent search of the bag revealed no drugs or money. The undersigned recognizes the government's well-intentioned desire to be as expansive as possible in terms of providing direct notice to potential claimants, but under these facts the undersigned finds the government's reach was unnecessarily wide.

For these reasons, the undersigned finds that Plaintiff exercised reasonable due diligence and sent notice of the action and a copy of the complaint to all potential claimants by means reasonably calculated to reach the potential claimants. *See* Fed. R. Civ. P. Supp. R. G(4)(b).

## V. Grounds for Default

Any claimant to the Defendant Currency was required to file a claim within 35 days after written notice was sent or 60 days from the first day of publication on the official government internet site, and an answer to the complaint or Federal Rule of Civil Procedure 12 motion within 21 days after the filing of a claim. Fed. R. Civ. P. Supp. R. G(5)(a)-(b). No person has filed a verified claim or statement of interest as required, nor otherwise appeared or answered the complaint, and the time to do so has expired.

## VI. Findings of Fact and Proposed Findings of Law

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. Mar. 26, 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards

11

of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. Feb. 5, 2003) (citations omitted).

Based on the complaint and Plaintiff's Motion for Default Judgment and supporting Memorandum, the supporting documents submitted with these filings, as well as the representations of counsel at the July 14, 2023 hearing, the undersigned makes the following findings of fact and proposed findings of law.

### A. Applicable Findings of Fact

On March 2, 2022, Ms. Copeland purchased a one-way flight from Norfolk International Airport to Los Angeles International Airport, with a layover at Dulles International Airport. (Compl. ¶ 8). The complaint notes that Los Angeles is a source city for illegal narcotics. (Compl. ¶ 8).

On the same day, federal agents deployed a certified, trained narcotics detection canine in the area of Dulles where checked baggage was being stored for Ms. Copeland's upcoming flight from Dulles to Los Angeles. (Compl. ¶ 8). The canine alerted to three suitcases: (1) a black canvas roller bag checked by Ms. Copeland; (2) a black canvas suitcase checked by Mr. Moses, referred to in the complaint as "Person #1,"; and (3) a white hard suitcase checked by A.B., referred to in the complaint as "Person #2." (Compl. ¶ 9).

The agents located Mr. Moses and attempted to speak with him. Mr. Moses gave the agents a Rhode Island identification card that was later determined to be fraudulent. Mr. Moses refused to consent to a search of his bag, refused to answer questions posed by the agents, and left the gate area and did not board the flight to Los Angeles. (Compl. ¶ 13). A Virginia state search warrant was obtained to search the bag checked by Mr. Moses, and inside agents recovered $57,545.00

12

wrapped in rubber bands and placed inside the pockets of multiple pairs of jeans. (Compl. ¶ 28). The DEA seized the $57,545.00. (Compl. ¶ 36). The $57,545.00 was named as a defendant in this case, but was later claimed by Mr. Moses, and thereafter Plaintiff reached a settlement agreement Mr. Moses. (Dkts. 17). The Court entered a consent order approving the terms of the settlement and ordering the forfeiture of a portion of the $57,545.00. (Dkt. 20).

Federal agents located Ms. Copeland and A.B. standing together and informed them that a certified narcotics detection canine had identified the presence of illegal drugs inside the bags they checked. (Compl. ¶ 11). Ms. Copeland and A.B. told agents that they were not traveling with any narcotics or large sums of cash. (Compl. ¶ 14). Ms. Copeland then consented to a search of the bag she checked, and inside the bag agents recovered the Defendant Currency wrapped in a rubber band and placed in the pocket of men's jeans. (Compl. ¶¶ 15, 17).[8] Ms. Copeland told agents she did not know about the money, and that she was just transporting the bag to Los Angeles for a person she had met on-line. (Compl. ¶ 20). Ms. Copeland further stated she met the unknown male in-person for the first time at the airport in Norfolk, at which time the unknown male gave Ms. Copeland the bag and told Ms. Copeland that his friends would take the bag from her in Los Angeles. (Compl. ¶ 21). Ms. Copeland also told agents to take all of the money in the bag because it did not belong to her and she did not want anything to do with it. (Compl. ¶ 24).

Officers "queried the Virginia wage database" and discovered that Ms. Copeland was last employed in the second quarter of 2020, with reported earnings of $301.20 in that quarter. (Compl. ¶ 30).

---

[8] A.B. also consented to the search of the bag he/she checked, but no money or narcotics were recovered.

13

The DEA seized the Defendant Currency on the same day, March 2, 2022. (Compl. ¶ 37). On April 20 and 28, 2022, Plaintiff sent notice of the seizure of the $57,545.00 seized from the bag checked by Mr. Moses and the Defendant Currency, respectively, to Ms. Copeland. (Compl. ¶ 38). On May 16, 2022, the DEA received a claim from Ms. Copeland to both the Defendant Currency and the $57,545.00 seized from the bag checked by Mr. Moses. (Compl. ¶ 39). On June 27 and 29, 2022, the DEA received supplemental claims to the Defendant Currency and the $57,545.00. In these claims, Ms. Copeland asserted the Defendant Currency was "a gift to push start her business" but also stated she had no documentation to support her claim. (Compl. ¶ 40).

### B. Legal Standard and Proposed Findings of Law

Based on these facts, Plaintiff alleges that the Defendant Currency is subject to forfeiture as moneys "furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to such an exchange, or as moneys used or intended to be used to facilitate a controlled substance exchange." (Compl. ¶ 1, Prayer for Relief).

In order to effect such a forfeiture, the United States must establish probable cause "for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute." *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986) (citations omitted). The Court finds that based on the totality of the circumstances, Plaintiff has satisfied its burden for the following reasons:

> (1) a canine trained and certified in detecting the odor of controlled substances alerted to the bag in which the Defendant Currency was found, establishing a nexus between the Defendant Currency and illegal narcotics trafficking;
>
> (2) Ms. Copeland had checked the bag but stated the bag had been given to her by an unidentified male for the sole purpose of transporting the money to Los Angeles, a source city for illegal narcotics;

(3) Ms. Copeland made inconsistent statements, evidencing that Defendant Currency is proceeds of illegal conduct: initially, on March 2, 2022, prior to the search of her bag, Ms. Copeland stated she was not carrying any large sums of cash and subsequent to the search stated she did not know the money was in the bag, the money was not hers, that she wanted nothing to do with the money, and the agents should take the money; however, on June 27 and 29, 2022, Ms. Copeland submitted a claim for the Defendant Currency in which she alleged the money in the bag she checked was a gift to be used to start a business, suggesting for the first time she knew the Defendant Currency was in her bag and the money had a legitimate source and purpose;

(4) Ms. Copeland provided no documents establishing a legitimate source for the Defendant Currency, including identifying who gave her the Defendant Currency as a gift;

(5) records obtained by Plaintiff show that Ms. Copeland did not have a source of legitimate income to reasonably account for the Defendant Currency; and

(6) Ms. Copeland's initial claim that she was transporting a bag to Los Angeles that unbeknownst to her contained a large sum of cash and that she was doing so at the direction of an unknown individual who she had previously only met on-line is entirely consistent with an unlawful money smuggling operation.

For these reasons, the undersigned finds that the well-pleaded facts in the complaint and the reasonable inferences to be drawn from those facts establish probable cause that the Defendant Currency was being furnished for or constitutes the proceeds of the unlawful exchange of controlled substances, and as such is subject to condemnation and forfeiture to Plaintiff pursuant to 21 U.S.C. § 881(a)(6). *See also* 21 U.S.C. § 841(a)(1).

### VII. Recommendation

For these reasons the undersigned recommends that a default judgment be entered in favor of the United States and that an order of forfeiture be entered declaring that the Defendant Currency, consisting of $35,995.00 in United States currency seized on March 2, 2022 at Dulles International Airport, be forfeited to the United States of America pursuant to 18 U.S.C. § 881(a)(6) and that the Attorney General, or a designee, be authorized to seize the forfeited funds and take full and exclusive custody and control of those funds once the order becomes final.

## VIII.  Notice

By means of the Court's electronic filing system the parties and the public are notified that any request to vacate the entry of default or any objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

**ENTERED** this 20th day of July, 2023.

*William C. Fitzpatrick*
William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia